IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SURGICAL CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Case No.<br>)<br>)<br>)<br>) |
| vs. | )<br>) |
| JOHN P. NEWTON, Thomas P. Webster, Esq., as Administrator of the Estate of Dawn M. Pryor, Jonathan S. Pryor, and Ashley Pryor | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff United States Surgical Corporation (hereinafter "U.S. Surgical"), in support of its claim against defendants John P. Newton (hereinafter "Newton"), Thomas P. Webster, Esq., as Administrator of the Estate of Dawn M. Pryor, Jonathan S. Pryor, and Ashley Pryor (hereinafter collectively the "Pryors") states and alleges as follows:

**PARTIES**

1. U.S. Surgical is a corporation organized under Delaware law with its principal place of business in Norwalk, Connecticut. The subject matter of this Declaratory Judgment action is a Distribution Agreement between Surgical Dynamics, Inc. and a purported distributor, Surgical Concepts Corporation. U.S. Surgical was formerly the sole shareholder of Surgical Dynamics, Inc. and retained certain claims of Surgical Dynamics, Inc. upon its sale.

3701247 v1 / 531420-1

2. Newton is an individual residing in the State of Florida. Newton is a proper party to this action. Newton held himself out as the President of a non-existent Florida corporation named Surgical Concepts Corporation and purported to execute the Distribution Agreement in his capacity as President of Surgical Concepts Corporation. Newton held himself out as the President of a corporation that did not exist and as the agent of a principal that did not exist in entering into the Distribution Agreement. As set forth more fully below, Newton purported to assign alleged individual rights, as well as alleged rights of a dissolved Florida corporation called Advanced Surgical Corporation, for which Newton was President.

3. The Estate of Dawn M. Pryor was established in the State of Ohio on September 29, 2009, with Thomas P. Webster, Esq., a resident of Ohio, as its Administrator. Prior to her death on June 23, 2009, Dawn M. Pryor claimed to be an assignee of rights under the Distribution Agreement in connection with the Underlying Litigation described below.

4. Jonathan S. Pryor, the husband of decedent Dawn M. Pryor, is an individual residing in the State of Ohio. Jonathan S. Pryor claims to be an assignee of rights under the Distribution Agreement in connection with the Underlying Litigation described below.

5. Ashley Pryor, the daughter of decedent Dawn M. Pryor, is an individual residing in the State of Virginia. Ashley Pryor claims to be an assignee of rights under the Distribution Agreement in connection with the Underlying Litigation described below.

**JURISDICTION AND VENUE**

6. This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 regarding a dispute involving an amount in excess of $75,000, exclusive of interest and costs.

7. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between U.S. Surgical and defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in that the Distribution Agreement at issue has a forum selection clause mandating that any disputes between the parties arising under or related to the contract shall only be brought in the Superior Court of the State of Connecticut located in the City of New Haven or the City of Stamford, or in the United States District Court for the District of Connecticut.

9. An actual case or controversy of a justiciable nature exists between U.S. Surgical and defendants involving the contractual rights and obligations of the parties. The controversy may be determined by a judgment of this action without other suits.

10. All parties who claim any interest in the matter in controversy or would be affected by any declaration or judgment made by this Court have been named in this action.

## DISTRIBUTION AGREEMENT

11. On or about December 1, 1999, a Distribution Agreement was entered into between Surgical Dynamics Inc., a corporation existing under the laws of the State of Delaware, and Surgical Concepts Corporation, a corporation purportedly existing under the laws of Florida. The purpose of the Distribution Agreement was for Surgical Concepts Corporation to create a sales force to represent and sell certain medical devices within the state of Florida. A true and correct copy of the Distribution Agreement is attached hereto as **Exhibit A**.

12. At the time that the Distribution Agreement was entered into, Surgical Dynamics, Inc. was a wholly owned subsidiary of U.S. Surgical. On or about June 28, 2002, U.S. Surgical sold its stock in Surgical Dynamics, Inc. to Stryker Corporation, but retained responsibility for

3

certain claims, including the products liability claims asserted in the Underlying Litigation described below.

13. The Distribution Agreement was executed on or about January 4, 2000 by Newton in his alleged capacity as the purported President of Surgical Concepts Corporation. In fact, however, Surgical Concepts Corporation did not exist. No articles of incorporation for Surgical Concepts Corporation had been filed with the Florida Department of State, and Surgical Concepts Corporation was not registered as a fictitious name for any corporation existing under the laws of Florida.

14. Newton held himself out as the purported President of a corporation that did not exist in entering into the Distribution Agreement, and Newton held himself out as the agent for a principal that did not exist in entering into the Distribution Agreement.

15. Paragraph 14 of the Distribution Agreement provides that disputes between the parties "shall be governed and construed in accordance with the laws of the State of Connecticut, without regard to any conflict of laws which might result in the application of the law of another jurisdiction."

16. Paragraph 10 of the Distribution Agreement states that:

> This Agreement and the rights hereunder **shall not be assigned** by [Surgical Concepts Corporation] to any third party **without the prior written consent** of the Vice President-Sales or President of [Surgical Dynamics, Inc.]. **Any purported assignment** by [Surgical Concepts Corporation] of this Agreement or [Surgical Concepts Corporation's] rights under this Agreement, **without such consent, shall be void.** (Emphasis Added.)

17. The terms, conditions, and scope of the Distribution Agreement were negotiated and accepted by the parties thereto prior to the event which gave rise to the Underlying Litigation, as defined and described below.

4

## UNDERLYING LITIGATION

18. On December 3, 2002, Dawn Pryor and her husband, Jonathan Pryor, and their daughter, Ashley Pryor, filed a complaint for damages in the Circuit Court of the Twentieth Judicial Circuit, in and for Charlotte County, Florida (Case No. 02-2229CA), against, among others, U.S. Surgical and Newton. Hereafter, this lawsuit is referred to as the "Underlying Litigation."

19. In the Underlying Litigation, the Pryors alleged that Dawn Pryor sustained personal injuries and damages after undergoing surgery on June 19, 2000, at Bon Secours – St. Joseph Hospital, in Port Charlotte, Florida, during which her surgeon inserted three Ray Threaded Fusion Cages ("Ray Cages") into her spine. The Ray Cage is a Class III medical device designed to treat degenerative disc disease. Two Ray Cages were placed at L3-L4 of Ms. Pryor's spine, and one Ray Cage was placed at L4-L5 of Ms. Pryor's spine. The Pryors claim that the posterior end cap of the single Ray Cage at L4-L5, came off and had to be replaced in a subsequent operation on September 14, 2000.

20. The Ray Cage at issue in this case was sold and distributed to St. Joseph Hospital pursuant to the Distribution Agreement described above.

21. In the Underlying Litigation, the Pryors asserted negligence and strict liability claims against U.S. Surgical in Counts X and XI of their Third Amended Complaint. In Count XII of their Third Amended Complaint, the Pryors alleged that Newton was negligent in the assembly, maintenance, testing and setup of surgical equipment for Dawn Pryor's surgery. A true and correct copy of the Third Amended Complaint in the Underlying Litigation is attached hereto as **Exhibit B**.

22. On November 20, 2003, the court in the Underlying Litigation entered a default against Newton. A true and correct copy of the default in the Underlying Litigation is attached hereto as **Exhibit C**.

23. On or about April 12, 2004, the Pryors entered into a Settlement Agreement with Newton. Pursuant to the terms of the Settlement Agreement, and in order to settle the Pryors' claims of negligence against him, Newton agreed to the entry of a Consent Final Judgment in favor of the Pryors in the amount of One Million and Five Hundred Thousand Dollars ($1,500,000.00). The Settlement Agreement further provided that the Pryors would provide a Covenant Not to Record or to Execute against Newton on the Consent Judgment, and that Newton would assign to the Pryors his purported rights against U.S. Surgical. A true and correct copy of the Settlement Agreement in the Underlying Litigation is attached hereto as **Exhibit D**. A true and correct copy of the Consent Final Judgment in the Underlying Litigation is attached hereto as **Exhibit E**.

24. Paragraph 10 of the Distribution Agreement states, in relevant part:

> This Agreement and the rights hereunder **shall not be assigned** by [Surgical Concepts Corporation] to any third party **without the prior written consent** of the Vice President-Sales or President of [Surgical Dynamics, Inc.]. **Any purported assignment** by [Surgical Concepts Corporation] of this Agreement or [Surgical Concepts Corporation's] rights under this Agreement, **without such consent, shall be void.** (Emphasis Added.)

25. Without obtaining the necessary prior written consent required by the Distribution Agreement, on or about April 5, 2004, Newton purported to assign alleged individual rights under the Distribution Agreement to the Pryors, even though Newton, individually, was not a party to the Distribution Agreement; instead, Newton was a signatory to the Distribution Agreement only as the purported President of Surgical Concepts Corporation, a corporation

6

which in fact did not exist. In addition, and also without prior written consent, Newton purported to assign alleged rights of Advanced Surgical Corporation, a dissolved Florida Corporation, d/b/a Surgical Concepts, under the Distribution Agreement to the Pryors, even though Advanced Surgical Corporation was not a party to the Distribution Agreement. In fact, Advanced Surgical Corporation did not exist at the time that the Distribution Agreement was entered into and did not file Articles of Incorporation with the Florida Department of State until February 18, 2000. Further, the name "Surgical Concepts" has never been registered with the Florida Department of State as a fictitious name for Advanced Surgical Corporation. A true and correct copy of the Assignment of Claims in the Underlying Litigation is attached hereto as **Exhibit F**.

26. On or about June 8, 2008, an addendum to the assignment was entered into in which Newton again without the required prior written consent purported to assign his alleged rights as an individual under the Distribution Agreement to the Pryors, even though Newton, individually, was not a party to the Distribution Agreement. In the addendum, Newton also attempted to characterize Surgical Concepts Corporation as an "a/k/a" for Advanced Surgical Corporation, a dissolved Florida Corporation, d/b/a Surgical Concepts and purported to assign to the Pryors alleged rights under the Distribution Agreement of "Advanced Surgical Corporation, a dissolved Florida Corporation, d/b/a Surgical Concepts a/k/a Surgical Concepts Corporation." However, as noted above, Advanced Surgical Corporation was never a party to the Distribution Agreement and did not exist at the time that the Distribution Agreement was entered into. In addition, as noted above, the name "Surgical Concepts" has never been registered with the Florida Department of State as a fictitious name for Advanced Surgical Corporation. Further, the name "Surgical Concepts Corporation" has never been registered with the Florida Department

State as a fictitious name for any other entity. Nor was Advanced Surgical Corporation, a dissolved Florida Corporation, d/b/a Surgical Concepts "also known as" Surgical Concepts Corporation. Nor can an entity with the word "corporation" in its name be legally registered in the State of Florida as a fictitious name for another fictitious name. A true and correct copy of the Addendum to Settlement Agreement and Assignment of Claims is attached hereto as **Exhibit G**.

27. The Pryors' Tenth Amended Complaint in the Underlying Litigation, at Count IX [for Breach of Contract] and Count X [for Common law Indemnity], seeks damages against U.S. Surgical based on purported rights under the Distribution Agreement which the Pryors contend were assigned to them pursuant to the Settlement Agreement, the Assignment of Claims, and the Addendum to Settlement Agreement and Assignment of Claims. A true and correct copy of the Tenth Amended Complaint in the Underlying Litigation is attached hereto as **Exhibit H**.

28. As a result of the foregoing alleged assignment of rights in breach of the Distribution Agreement, the Pryors now claim to have rights under the Distribution Agreement and claim that U.S. Surgical is liable to them for One Million and Five Hundred Thousand Dollars ($1,500,000.00), pre-judgment and post-judgment interest, costs, and attorneys fees on the Consent Judgment. U.S. Surgical has incurred, and continues to incur, court costs, attorneys fees, and other expenses in connection with defending the foregoing claims of the Pryors in the Underlying Litigation.

## COUNT I

### FOR JUDGMENT DECLARING THAT THE ASSIGNMENT OF RIGHTS UNDER THE DISTRIBUTION AGREEMENT IS VOID

29. U.S. Surgical incorporates by reference paragraphs 1 through 28 above.

8

30. Counts IX and X of the Pryors' Tenth Amended Complaint in the Underlying Litigation allegedly arose from the Distribution Agreement and from rights allegedly assigned thereunder against U.S. Surgical.

31. Under Connecticut law, any assignment of rights under a contract which expressly states that such an assignment is void, is void. Rumbin v. Utica Mutual Insurance Company, 254 Conn. 259 (2000).

32. Paragraph 10 of the Distribution Agreement expressly states that any assignment of rights without prior written consent is void.

33. The purported assignment of rights under the Distribution Agreement was made without prior written consent and is *void ab initio*.

34. As a direct and proximate result of the foregoing alleged assignment of rights in breach of the Distribution Agreement, the Pryors now claim to have rights under the Distribution Agreement and claim that U.S. Surgical is liable to the Pryors for One Million and Five Hundred Thousand Dollars ($1,500,000.00), pre-judgment and post-judgment interest, costs, and attorneys fees on the Consent Judgment. U.S. Surgical has incurred, and continues to incur, court costs, attorneys' fees, and other expenses in connection with defending the foregoing claims of the Pryors in the Underlying Litigation.

## COUNT II

### FOR A JUDGMENT DECLARING THAT THE PARTIES WHO PURPORTED TO ASSIGN RIGHTS HAD NO RIGHTS TO ASSIGN UNDER THE DISTRIBUTION AGREEMENT

35. U.S. Surgical incorporates by reference paragraphs 1 through 34 above.

36. Newton, individually, was not a party to the Distribution Agreement.

37. Advanced Surgical Corporation was not a party to the Distribution Agreement.

38. Advanced Surgical Corporation, a dissolved Florida Corporation, d/b/a Surgical Concepts was never a party to the Distribution Agreement.

39. Advanced Surgical Corporation, a dissolved Florida Corporation, d/b/a Surgical Concepts a/k/a Surgical Concepts Corporation was never a party to the Distribution Agreement.

40. The purported assignors of rights in the Settlement Agreement, the Assignment of Claims, and the Addendum to Settlement Agreement and Assignment of Claims in the Underlying Litigation were not parties to and had no rights under the Distribution Agreement, and, therefore, did not convey any rights under the Distribution Agreement as a result of entering into the Settlement Agreement, the Assignment of Claims, and the Addendum to Settlement Agreement and Assignment of Claims in the Underlying Litigation.

41. As a direct and proximate result of the above-referenced purported assignment of rights, the Pryors allege that U.S. Surgical is not only liable for paying the Pryors the One Million and Five Hundred Thousand Dollar ($1,500,000.00) Consent Judgment entered against John Newton, individually, and Advanced Surgical Corporation d/b/a Surgical Concepts, but also allege that U.S. Surgical must pay the Pryors pre and post judgment interest, costs, and attorneys fees on the Consent Judgment. U.S. Surgical has incurred, and continues to incur, liability in terms of court costs, attorneys fees, and other expenses in connection with defending the foregoing claims of the Pryors in the Underlying Litigation and is exposed to liability for the Consent Judgment.

## REQUEST FOR RELIEF

42. U.S. Surgical respectfully requests the following relief:

    (a) That this Court enter judgment declaring that the alleged assignment of rights under the Distribution Agreement is *void ab initio*;

10

(b) That this Court enter judgment declaring that John Newton, individually, had no rights to assign under the Distribution Agreement, as he was not individually a party to that agreement;

(c) That this Court enter judgment declaring that Advanced Surgical Corporation, whether shown with or without any of the following descriptors: "Advanced Surgical Corporation, a dissolved Florida Corporation, d/b/a Surgical Concepts a/k/a Surgical Concepts Corporation," had no rights to assign under the Distribution Agreement, as it was not a party to that agreement; and

(d) For such further relief as the Court deems just and proper.

Dated: October 30, 2009

        DANAHER, LAGNESE & SACCO, P.C.

By: _____
    Jonathan A. Kocienda
    Federal Bar No. CT20656
    21 Oak Street
    Hartford, CT 06106
    E-mail: jkocienda@danaherlagnese.com
    Telephone: 860.247.3666
    Facsimile: 860.547.1321

    Attorneys for UNITED STATES
    SURGICAL CORPORATION